Maurice BIANCHI, fdba M. Bianchi of California, Plaintiff-Appellant,

v.

William J. PERRY, Secretary of Defense; United States Department of Defense; E.M. Straw, Vice Admiral, Director of the Defense Logistics Agency; The Defense Logistics Agency; Henry R. Glisson, Brigadier General, Commander of the Defense Personnel Support Center, a Division of the Defense Logistics Agency; The Defense Personnel Support Center, Defendants-Appellees.

No. 96–15869.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1997.

Decided April 9, 1998.

George E. Graziadei (On the Briefs); and Scott Michael Cantor (Argued), Graziadei & Cantor, Ltd., Las Vegas, NV, Gerson B. Kramer (Argued), Chevy Chase, MD, for plaintiff-appellant.

Mark A. Melnick, Commercial Litigation Branch, Department of Justice, Washington, DC, for defendants-appellees.

Before: PREGERSON, NOONAN and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

This is a res judicata case regarding settlement of a government contract dispute.

### Facts

The government hired Bianchi to sew garments for the military. In 1979 and 1980, it

contracted for Bianchi to make about 43,000 raincoats for the Navy, 27,000 women's jackets for the Air Force, and 125,000 men's coats. Bianchi borrowed money from Bank of America secured in part by an assignment of contract proceeds. The bank loan was guaranteed by the Small Business Administration. The bank went through the proper steps to obtain government approval of the assignments and to make them binding upon the government.

Claims arose in all directions. Bianchi and the bank had a dispute in state court over whether the bank properly performed its duties under the loan agreement. Bianchi and the United States had a dispute in the Armed Services Board of Contract Appeals over whether the government owed him more money. Eventually the bank and the government had a dispute as well.

Bianchi's claim against the military was settled by stipulation. The stipulation, made in September 1988, provided that Bianchi would recover $617,500 plus interest, the government would recover nothing on its claims, and Bianchi reserved his rights to pursue "value engineering change proposal claims," and to pursue his Equal Access to Justice Act claim for legal fees and expenses related to his claims.[1] The Armed Services Board of Contract Appeals then issued a decision accepting the stipulation, and saying "the appeals are sustained" and "in the nature of a consent judgment, the Board makes a mone-

tary award in the amount of $617,500.00 with interest from 18 June 1981." With more than seven years of interest, the government's obligation under this judgment was $1,141,220.83. The government paid Bianchi that amount of money.

Two years later, in 1990, Bank of America filed a complaint in the United States Claims Court against the government. The bank's complaint said that Bianchi owed the bank more than $1.1 million, so the government should have paid the money to the bank, not to Bianchi. The government's answer in the Claims Court claimed a right to setoff. The government claimed that because the Small Business Administration had already paid the bank on its 90% guarantee of Bianchi's loan, and Bianchi owed the SBA more than the amount he had been paid, the government was entitled to setoff whatever Bianchi owed the SBA against what the government owed the bank.

The government filed a third-party complaint against Bianchi in the Claims Court proceeding. In that complaint, the government said that it paid Bianchi his $1.1 million settlement in error, because he owed the Small Business Administration more than that. The complaint says "the SBA was entitled to the entire $1,141,220.83. Consequently that money was erroneously paid to Mr. Bianchi. Neither he nor the bank was entitled to it.... The government is enti-

---

1. Here is the stipulation in full:

The parties to the above-listed appeals agree to stipulate to the following decision by the Board:

"1. The parties agree that Mr. Maurice Bianchi, as the successor to M. Bianchi of California, is entitled to recover $617,500.00 on his claims in the following appeals: ASBCA Nos. 26362, 26363, 26364, 26365, 26505, 26506, 26513, 26642, 29932, 29933 and 29934; that the government is entitled to take nothing on its claims in the following appeals: ASBCA Nos. 26362, 26363, 26364, 26365, 26366, 26505, 26506, 26513, 26642, 29932, 29933 and 29934; and that Mr. Bianchi is entitled to interest computed in accordance with Clauses L78 (Disputes (1979 MAR)) of the contracts, at the rates prescribed by the Secretary of the Treasury, under the Renegotiation Act, Public Law 92–41, on the principal amount of $617,500, such interest to run from June 19, 1981 until the date of payment; and that the parties waive their rights to seek reconsideration of this stipulated decision of the Board or to appeal that stipulated decision;

"2. This settlement is without prejudice to Mr. Bianchi's right to pursue any and all Value Engineering Change Proposal Claims under his contracts with DPSC; and

"3. This settlement is without prejudice to Mr. Bianchi's right to pursue an application under the Equal Access to Justice Act to recover whatever legal fees and litigation expenses to which he may be entitled in connection with these claims and appeals. The parties stipulate that the issues of prevailing party and substantial justification will be decided on the basis of the record made at the first trial. The parties agree that the application for legal fees and litigation expenses under the Equal Access to Justice Act will be submitted within thirty days of receipt by Appellant of the agreed-upon settlement program."

Except as noted above, Appellant and the government agree to stipulate to the dismissal of these appeals with prejudice.

tled to the repayment of the $1,141,220.83 erroneously paid by it to Mr. Bianchi."

The bank initially lost in the Claims Court. The court held that the government may recover funds erroneously paid, under *American National Bank and Trust v. United States,* 23 Cl.Ct. 542, 547 (1991) and *United States v. Wurts,* 303 U.S. 414, 415, 58 S.Ct. 637, 638, 82 L.Ed. 932 (1938). Because the government had paid Bianchi in error, Bianchi had to return the money. The bank was entitled to nothing on its assignment, because the SBA had already paid the guarantee, and the bank had assigned the notes to the SBA. The Claims Court ruled that the government's erroneous payment to Bianchi had resulted from its own negligence, and it had not requested its money back until October of 1990, so interest was denied.

Bianchi appealed, and won. In a published decision, *Bank of America National Trust & Savings Association v. United States,* 23 F.3d 380 (Fed.Cir.1994), Bianchi won a determination that the government was not entitled to assert its claim against Bianchi at all. *Id.* at 384. The reason was that the government had settled on paying him $617,500 plus interest. The Federal Circuit said there is a strong policy of upholding and enforcing settlement agreements, and "the government's right to recoup erroneously paid funds cannot be invoked by the government as a means to circumvent a legal obligation." *Id.* at 383. The settlement was made at arms' length, there was no claim that Bianchi withheld material information, the government knew of the assignments to the bank and the bank's assignments to the SBA. The Federal Circuit noted that there was no evidence of any fraud, misdirection or concealment by Bianchi. "In the absence of any fraud, misdirection, or concealment, the government may not recover funds paid in good faith and to the satisfaction of the interested parties." *Id.*

The Federal Circuit pointed out that the government could easily have protected itself against liability to the bank, and perhaps did not because Bianchi would not have agreed to a settlement in which he would not receive the $617,500 plus interest. "[W]hatever the reason for its failure to protect itself, the government cannot now renege on its commitment to honor its settlement with Bianchi,

into which it entered into voluntarily and with full knowledge of the facts." *Id.* The Federal Circuit considered whether the government could recover from its putatively mistaken payment by the indirect means of a third-party complaint on the bank's claim, even though the settlement had been incorporated in a final judgment, and decided that "the government should not be allowed to do indirectly what it is prohibited from doing directly." *Id.* at 384.

The bank prevailed against the government as well, based on the seniority of its claim. The Federal Circuit held that "the government's payment to Bianchi in settlement of the contract dispute was a payment under the contract that should have gone to the bank under the assignment." *Id.* at 384. The SBA contract had limited setoff rights, so that government rights against Bianchi could not be set off against the bank. *Id.* at 385.

Meanwhile, before the bank ever sued the government, Bianchi had litigated his claim for Equal Access to Justice attorney's fees and expenses before the Armed Services Board of Contract Appeals. After an opinion in 1989, and a remand for negotiation, the Board decided in a second opinion September 25, 1990, that Bianchi was entitled to $475,-724.51 for legal fees and expenses. But the government did not send Bianchi the money.

Eventually, after complying with all of the demand procedures required by statutes and regulations, Bianchi filed an action in the United States District Court for the District of Nevada, to collect the $475,724.51 EAJA fees and expenses he had won in the Armed Services Board of Contract Appeals. This was money he had spent in the early '80s to make the government pay him for the raincoats and jackets. The district court granted summary judgment against Bianchi on this claim. Bianchi's appeal of this summary judgment is what we have before us now.

The district court decided that Bianchi's EAJA claim was sufficiently distinct from the claim ruled upon by the Federal Circuit, so it should be treated differently for purposes of setoff. The district court concluded that the government could use its claim for mistaken payment as a setoff against what it owed

Bianchi on his successful $475,000 Equal Access to Justice Act award.

## Analysis

The hard questions in this case relate to setoff. When the government makes a mistaken agreement to settle a claim (if indeed the agreement or payment was mistaken), should it be allowed to recover the money by setting it off against that claim or another? We do not have to answer that question. The Federal Circuit did. Even if the settlement was negligently made, even though it was with the government, a deal is a deal. Though other questions are raised, this case finally turns on whether the Federal Circuit decision is res judicata on setoff against another part of the same deal. It is.

## I. Parole Evidence.

The settlement with Bianchi, for $617,500 in new money, may not have been erroneous at all. Bianchi submitted affidavits in opposition to summary judgment which tended to show that he and his lawyer had raised and discussed the SBA claims· when they negotiated the $617,500 settlement. The affidavits indicated that the settlement was cut from $635,000 dollars to $617,500, in order to include a nominal amount satisfactory to the government to settle the SBA claims against Bianchi. In addition, the government had offered a $100,000 larger settlement that would include the Equal Access to Justice claim, or else had offered the lesser amount reserving Bianchi's right to pursue his Equal Access to Justice Act claim. Bianchi thought he would get more than $100,000, so he had turned down the $735,000 dollar offer to include EAJA fees and expenses. His $475,000 EAJA award shows he was right.

The district court held that this evidence should not be considered, under the parole evidence rule. Bianchi argues on appeal that it should be considered, because his affidavit and other materials show that the settlement stipulation was not a fully integrated agreement. Under Bianchi's theory, as evidenced by the affidavit and contemporaneous correspondence, the government's payment to him was not a mistake at all. The purpose was to pay him personally enough money to induce him to settle, and to pay that money without a silent setoff of what he owed the SBA on his defaulted and assigned bank loans.

We conclude that we do not have to decide whether the district court erred in excluding these materials under the parole evidence rule. Because the res judicata consequences of the Federal Circuit decision, combined with a fair reading of the stipulation and judgment before the Armed Services Board of Contract Appeals, are conclusive of the effect of the settlement agreement in favor of Bianchi, we need not decide whether the parole evidence should have been considered.

## II. The Settlement Agreement.

■ The stipulation the parties made is typical of the forms used to settle disputed claims in both directions, with specified rights reserved to allow one side to pursue additional amounts. The form is that (1) Bianchi "is entitled to recover" $617,500 plus interest, (2) "the government is entitled to take nothing on its claims," (3) the settlement is "without prejudice to" Bianchi's right to pursue "Value Engineering Change Proposal claims," and (4) the settlement is "without prejudice to" Bianchi's right to pursue an EAJA application to recover whatever fees and expenses he may be entitled to. Enormous numbers of claims are settled with similar forms every week, with the government and in innumerable private lawsuits about torts and contracts. We share the Federal Circuit's concern that "there is a compelling public interest and policy in upholding and enforcing settlement agreements voluntarily entered into." *Bank of America,* 23 F.3d at 383.

Any honest and competent lawyer would understand this settlement agreement in the same way. It means Bianchi gets $617,500 plus interest, plus whatever he can win on his "Value Engineering Change Proposal claims," plus whatever he can win on his Equal Access to Justice Act claim. Attorney's fees claims often are broken out of a settlement, as in this one, because the parties cannot agree on what determinations a court will make on prevailing party, substantial justification, and amount, *see* 5 U.S.C. § 504, and each is willing to bear the risk of a less favorable determination than it expects.

For a lawyer to enter into such a settlement agreement, with the unstated intention that his client should not pay the money agreed to, would be sharp practice. The government argues from lack of parallelism in the phrasing of the different paragraphs of the settlement agreement that Bianchi is only entitled to the $617,500 without setoff, not the EAJA award. The settlement agreement said Bianchi "is entitled to recover" the $617,500, but only that it is "without prejudice to" his "right to pursue" his Equal Access to Justice Act claim "to recover" attorneys' fees and expenses, so it did not agree to pay the EAJA award. The government's theory is that it promised Bianchi could "recover" the $617,500, but not the EAJA award, which it only left Mr. Bianchi free to "pursue."

We reject the distinction. It is apparent from a reading of the stipulation in its entirety that the parties did not mean that the government would only pay the $617,500, but dispute payment of what Mr. Bianchi was found to be entitled to as an EAJA award. Had the government meant that, the agreement would have said so. The agreement says Bianchi is entitled "to recover" the $617,500 principal, and that he is "entitled to" interest, yet even though the agreement did not use the phrase "to recover" regarding Mr. Bianchi's entitlement to interest, neither side understood absence of the phrase to imply that he could not "recover" the interest without a setoff. The agreement does use the phrase "to recover" in the EAJA provision, "right to pursue an application ... to recover." The phrase "to recover" is not in the Value Engineering Change proposal Claims paragraph, "right to pursue." Not a single one of the provisions is written in parallel phrasing with any other. The only plausible reading we can see for the slight differences in phrasing are lack of careful editing for parallelism, not an expressed mutual intention that even if Bianchi won an EAJA award, it would not be paid without a fight. In the context of this dispute, the word "pursue" meant that Bianchi had to win an EAJA award, but once the award was established, the government would pay it. In private actions where there is a right to attorneys' fees, lawyers frequently agree to settle for a principal amount and to allow one side to pursue an attorneys' fees award, meaning that they will pay it once entitlement to attorneys' fees and amount are determined. Were an insurance defense lawyer to enter into such a settlement agreement on behalf of an insurance company, and then claim that they only promised to allow pursuit of the money, not to pay it, the best the lawyer and insurer could hope for would be long-term distrust, and more likely they could expect bad faith litigation. Giving the settlement agreement so strained construction would encourage sharp practice. Thus we conclude that there is no difference in whether the government agreed to pay the $617,500 and whether it agreed to pay the EAJA award, once Mr. Bianchi had won a liquidated amount. The setoff issue is the same as to both. To the extent that the government had a claim against Bianchi for his unpaid SBA loans, the settlement agreement no more allowed the government to lie in the weeds with a setoff against the EAJA award than with the $617,-500.

### III.  The Federal Circuit Decision.

Although the Federal Circuit decision dealt only with the $617,500, not the EAJA award, the reason for the Federal Circuit result does not allow for a distinction between the one and the other. With respect to the EAJA attorney's fees, as with the principal and interest, the government acted with its eyes open. It had full knowledge of the assignment of Bianchi's right to payment to his bank, and of the bank's assignment to the SBA. The Federal Circuit decision establishes that there was no fraud, and the government made a commitment to pay Bianchi the money despite its potential entitlements against him. If the government mistakenly overlooked its rights (and it may not have), then its own negligent error does not entitle it to renege on its commitment. *See Restatement of Restitution* § 12 (unilateral mistake not grounds for restitution). Allowing the government to renege on its commitment because it negligently agreed to pay Bianchi more than it should have agreed to pay him "would seriously decrease the willingness of parties to settle litigation on mutually agreeable terms and thus weaken the efficacy of

settlements generally." *Bank of America,* 23 F.3d at 384. Using the setoff against the attorney's fees would have exactly the same effect as allowing its use against the $617,500 or the interest, and "the government should not be allowed to do indirectly what it is prohibited from doing directly." *See id.*

Because its ratio decidendi does not allow for a distinction, we conclude that the Federal Circuit decision is res judicata. That decision established that the government was not entitled to a setoff against the $617,500 or the interest based on Bianchi's assignment to his bank and the bank's assignment to the SBA. The reasoning of the decision establishes that the assignments could not entitle the government to a setoff against the settlement at all. The meaning of that agreement, with respect to setoff, has already been conclusively determined by the Federal Circuit. *See Robi v. Five Platters, Inc.,* 838 F.2d 318, 321–22 (9th Cir.1988).

**Conclusion**

Although Bianchi's parole evidence suggests that the government intentionally relinquished whatever right it had to collect the SBA loan from the proceeds of Bianchi's award, we have assumed the contrary, because we are not deciding the parole evidence issue. Thus, we assume that the government negligently omitted to provide in the settlement agreement that it would set off its SBA entitlement against Bianchi's contract entitlement. Even so, it is nevertheless res judicata under the Federal Circuit decision that the government walked away from the money. We will not impose a strained reading on the settlement agreement that would enable the government to recover from its own negligence by sharp practice.

REVERSED.

